UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NANCY E. KELLEY-HUNTER,<br>Individually and as Representative of<br>Estate of Burt Hunter,<br><br>Defendant. | Civil Action No. 15-2148 (JEB) |

**MEMORANDUM OPINION**

In an effort to hide assets beyond the long arm of the taxman, some people occasionally maintain secret foreign bank accounts. When such banks pass along this information to the Internal Revenue Service, however, the gambit appears less wise. The United States here has sued Nancy E. Kelley-Hunter − individually and as the representative of the estate of her late husband, Burt Hunter − for her willful failure to disclose a bank account in Switzerland worth about $3.4 million. In such a circumstance, the Government may assess a civil penalty of up to 50% of a taxpayer's interest in such account. Having already obtained a default judgment against the estate for $857,625, which represents half of Burt Hunter's 50% share in the account, the Government now moves for summary judgment for the same amount from Kelley-Hunter individually. As the United States has sufficiently demonstrated its entitlement to the sum sought − and she has filed no opposition − the Court will grant its request.

**I.    Background**

Given that Defendant has not opposed the Government's Motion, the Court may treat as true the facts set forth in Plaintiff's Statement of Undisputed Material Facts. See Fed. R. Civ. P.

1

56(e)(2). Before doing so, however, it ensures that each fact is properly supported by record evidence. See Winston & Strawn, LLP v. McLean, 843 F.3d 503, 505 (D.C. Cir. 2016).

Kelley-Hunter married Burt Hunter in 1997, and the two moved to France the following year. See ECF No. 25-5 (Statement of Undisputed Material Facts), ¶ 3. In approximately 2006, they transferred money to an account at UBS, a Swiss financial-services entity. Id., ¶ 5. Kelley-Hunter exercised control over the account, meeting with the UBS account representative a couple of times a year; communicating with him by phone and fax, including when she desired to pay a bill from the account; and possessing authority to direct investments from the account. Id., ¶¶ 8-11. The account was nominally held in the name of Towers International, Inc., but this did not affect Kelley-Hunter's ability to control its assets. Id., ¶¶ 17-18. In fact, UBS possessed a form giving her power of attorney and granting her authority over the account. Id., ¶ 32.

Kelley-Hunter personally prepared the couple's returns for tax years 2003-07. Id., ¶ 21. Although she indicated an interest in another foreign account in the earlier of those years, she did not do so for the UBS account for the 2007 return. Id., ¶¶ 21-23. This was so even though she had knowledge of the operation of the account at this time and had even received an email from the account representative indicating that "dividends between [June 13, 2006] and [December 7, 2007] were €46,817EUR." Id., ¶ 24 (alteration in original). When she received a letter from UBS in February 2009 that the bank had disclosed the existence of her account to the IRS, she subsequently filed a document with the Service mentioning the account and listing its value as $3.8m. Id., ¶¶ 27-28. The value at the end of 2007, however, was approximately $3.4 million. Id., ¶ 36.

The Government brought this action in 2015 to recover the civil penalties it believed were due. It originally sued both Kelley-Hunter and Hunter individually, but when he died in

January 2016, the Government substituted his estate as a party for him. See ECF No. 5 (Motion for Substitution) at 1. The case proceeded through lengthy and at times contentious discovery, in part delayed by Defendant's residing in France. Ultimately, the Government successfully obtained a default judgment against Burt Hunter's estate in the amount of $857,625. See ECF No. 20. Kelley-Hunter, meanwhile, was refusing to respond to Court Orders regarding discovery, and her counsel ultimately withdrew. See Minute Orders of August 17 and September 26, 2017. The Government subsequently moved for summary judgment against her, and she never responded, despite the Court's specifically instructing her to do so or risk entry of judgment against her. See ECF No. 26 (Order).

## II. Standard of Review

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

**III.  Analysis**

Under 31 U.S.C. § 5314(a), a taxpayer must "file reports . . . when the . . . person makes a transaction or maintains a relation for any person with a foreign financial agency."  That means that anyone "having a financial interest in, or signature or other authority over, a bank, securities or other financial account [over $10,000] in a foreign country shall report such relationship . . . for each year in which such relationship exists."  31 C.F.R. §§ 1010.350(a), 1010.306(c).  Taxpayers do so via Form 1040, Schedule B, which directs them to Form TD F 90-22.1, which in turn provides instructions for reporting such financial interest.  See United States v. McBride, 908 F. Supp. 2d 1186, 1200 n.2 (D. Utah 2012).  Willful failure to do so may result in penalties equal to 50% of the value of the undisclosed account.  See 31 U.S.C. § 5321(a)(5)(C)(i).

The Government, accordingly, may prevail by satisfying the following elements: (1) Kelley-Hunter was a U.S. citizen (or other qualified person) at the time of her filing; (2) she had a financial interest in or signatory authority over the account at issue; (3) the account balance exceeded $10,000; (4) the account was in a foreign country; (5) she failed to disclose the account; (6) the failure was willful; and (7) the amount of the proposed penalty is proper.  McBride, 908 F. Supp. 2d at 1201.

There can be little doubt that the Government has checked all of the above boxes.  First, Kelley-Hunter was a U.S. citizen at the relevant time.  See ECF No. 10 (Answer), ¶ 3.  Second, as the Background sets forth, she had a clear interest in the account.  Third, the balance of $3.4m easily exceeds the $10,000 threshold.  Fourth, the UBS account was maintained in Geneva, Switzerland.  Fifth, she has admitted that she did not disclose the UBS account in her return for tax year 2007.  See SUMF, ¶ 23.

The sixth element is willfulness, which at times can prove challenging to establish, but not here. To begin, Kelley-Hunter did file previous returns that mentioned foreign accounts, so she clearly knew of the requirement. In addition, she sent emails to her accountant, Peter Kent, that display a consciousness of guilt, including references to the IRS being "so far behind us with the UBS junk, that they won't catch up with [her husband Burt] in his lifetime and I'll be on my way to Tahiti." Id., ¶ 46. In any event, willful blindness or reckless disregard satisfies the required mental state, and Kelley-Hunter certainly acted with at least that degree of intent. McBride, 908 F. Supp. 2d at 1205 (citing Global-Tech Applicanes, Inc. v. SEBSA, 563 U.S. 754, 766 (2011)).

Finally, as to the seventh element, the amount of 25% of the admitted value of the account – *i.e.*, half of her half of the total – is certainly a proper sum.

## IV. Conclusion

The Court, accordingly, will issue a contemporaneous Order granting summary judgment in favor of the Government and awarding $857,625 in civil penalties.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: December 12, 2017